IN THE UNITED STATES DISTRICT COURT
FOR THE SOUTHERN DISTRICT OF TEXAS

| | |
|---|---|
| WOODBOLT HOLDINGS, LLC, a Delaware Limited Liability Company, and WOODBOLT DISTRIBUTION, LLC d/b/a NUTRABOLT, a Delaware Limited Liability Company,<br><br>Plaintiffs,<br><br>v.<br><br>KYLE THOMAS, individually, TERRENCE MOORE, JR., individually, MADISON MATHEWS, individually, and DRINK RECESS, INC., a Delaware corporation,<br><br>Defendants. | Case No. 4:26-cv-01669<br><br>**PLAINTIFFS' WOODBOLT HOLDINGS, LLC AND WOODBOLT DISTRIBUTION, LLC OPPOSITION TO INDIVIDUAL DEFENDANTS' MOTION TO DISMISS**<br><br>Date: April 20, 2026<br>Time: N/A<br>Location: N/A<br>Judge: Hon. Keith P. Ellison<br>Date Action Filed: February 27, 2026 |

**PLAINTIFFS' WOODBOLT HOLDINGS, LLC AND WOODBOLT DISTRIBUTION, LLC RESPONSE IN OPPOSITION TO INDIVIDUAL DEFENDANTS' MOTION TO DISMISS**

# TABLE OF CONTENTS

**Page**

I.    SUMMARY OF THE ARGUMENTS ................................................................................ 1

II.   NATURE AND STAGE OF THE PROCEEDING.......................................................... 2

III.  STATEMENT OF ISSUES TO BE RULED ON............................................................. 2

IV.   STATEMENT OF FACTS .............................................................................................. 3

    A.    The Individual Defendants............................................................................................. 3

    B.    Thomas's Business Activities With Recess While Employed by Nutrabolt ...................... 4

    C.    Moore Misappropriated Nutrabolt's Confidential Information ......................................... 5

    D.    Recess's Intentional Interference ................................................................................. 5

V.    LEGAL STANDARD.................................................................................................... 6

VI.   ARGUMENT.................................................................................................................. 7

    A.    Nutrabolt Has Alleged A Plausible Trade Secrets Claim Against Defendants. ................. 7

        1.    Nutrabolt Has Identified Its Trade Secrets With Reasonable Particularity. ................... 9

        2.    Nutrabolt Has Plausibly Alleged Numerous Acts of Trade Secret Misappropriation.. 12

        3.    Nutrabolt Has Plausibly Alleged That Its Trade Secrets Were Used In Interstate Commerce. ................................................................................................................. 13

    B.    Plaintiffs Plausibly Allege Breach of Contract................................................................ 14

        1.    The Individual Defendants Knowingly Entered Into Valid, Enforceable Contracts Containing Restrictive Covenants................................................................................ 15

        2.    The Individual Defendants' Reasonableness Arguments Are Inappropriate at This Juncture. ..................................................................................................................... 16

    C.    Plaintiffs Plausibly Allege Breach of Fiduciary Duty ..................................................... 17

        1.    Nutrabolt Pleads Sufficient Facts To Support a Plausible Breach of Fiduciary Duty Claim........................................................................................................................... 17

        2.    Nutrabolt's Claim is Not Preempted........................................................................... 18

    D.    Plaintiffs Adequately Plead Damages and Harm............................................................ 19

    E.    If There Are Any Deficiencies With the Complaint, this Court Should Grant Leave to Amend........................................................................................................................... 20

VII.  CONCLUSION.............................................................................................................. 20

## TABLE OF AUTHORITIES

**Page(s)**

**Cases**

*360 Mortgage Grp., LLC v. Homebridge Fin. Servs., Inc.*,
No. 1:14-CV-847, 2016 WL 900577 (W.D. Tex. Mar. 2, 2016)........................................24, 25

*U. S. ex rel. Adrian v. Regents of the Univ. of Cal.*,
363 F.3d 398 (5th Cir. 2004) ........................................................................................26

*Ashcroft v. Iqbal*,
556 U.S. 662 (2009)........................................................................................................13

*Bell Atl. Corp. v. Twombly*,
550 U.S. 544 (2007)..................................................................................................13, 17

*Blue Star Press, LLC v. Blasko*,
No. SA-17-CA-111-OLG (HJB), 2018 WL 1904835 (W.D. Tex. Mar. 6,
2018) .............................................................................................................................13

*BRG Insurance Solutions, LLC v. O'Connell*,
No. 3:16-CV-2448, 2017 WL 7513649 (N.D. Tex. July 18, 2017)..................................15, 18

*Broadleaf IT, LLC v. Walley*,
No. 4:24-CV-00303, 2024 WL 4329145 (S.D. Tex. Aug. 17, 2024) .....................................17

*Bureau Veritas Commodities and Trade, Inc. v. Cotecna Inspection SA*,
No. 4:21-CV-00622, 2022 WL 912781 (S.D. Tex. Mar. 29, 2022) .......................................16

*Cantor Fitzgerald, L.P. v. Ainslie*,
312 A.3d 674 (Del. 2024) ...............................................................................................20

*Clean Energy v. Trillium Transp. Fuels, LLC*,
No. CV H-19-244, 2019 WL 1522521 (S.D. Tex. Mar. 22, 2019)..................................18, 19

*Clearline Techs. Ltd. v. Cooper B-Line, Inc.*,
No. CIV.A. H-11-1420, 2012 WL 43366 (S.D. Tex. Jan. 9, 2012) (Ellison, J.) .....................17

*Daily Instruments Corp. v. Heidt*,
998 F.Supp.2d 553 (S.D. Tex. 2014) ...............................................................................21

*DeSantis v. Wackenhut Corp.*,
793 S.W.2d 670 (Tex. 1990).............................................................................................20

*DISA Glob. Sols., Inc. v. ASAP Drug Sols., Inc.*,
No. 4:18-cv-2849, 2019 WL 13030151 (S.D. Tex. Sept. 27, 2019).......................................19

*Dominguez v. Target Corp.*,
 No. 5:18-CV-23, 2019 WL 1004569 (S.D. Tex. Feb. 8, 2019) ................................................13

*Downhole Tech. LLC v. Silver Creek Servs. Inc.*,
 No. H–17–0020, 2017 WL 1536018 (S.D. Tex. Apr. 27, 2017) .............................................16

*Fantastic Sams Franchise Corp. v. Mosley*,
 No. 16–cv–2318, 2016 WL 7426403 (S.D. Tex., Dec. 23, 2016) ...........................................23

*First United Pentecostal Church of Beaumont v. Parker*,
 514 S.W.3d 214 (Tex. 2017).................................................................................................23

*Genesco Sports Enter. v. White*,
 No. 3:11-CV-1345, 2011 WL 6593415 (N.D. Tex. Oct. 27, 2011).........................................14

*Gordon v. Mathieson*,
 No. 4:18-CV-1111, 2018 WL 3105115 (S.D. Tex. June 25, 2018).........................................14

*Great Plains Trust Co. v. Morgan Stanley Dean Witter & Co.*,
 313 F.3d 305 (5th Cir. 2002) ...............................................................................................26

*Guy Carpenter & Co., Inc. v. Provenzale*,
 334 F.3d 459 (5th Cir. 2003) ...............................................................................................20

*Harold H. Huggins Realty, Inc. v. FNC, Inc.*,
 634 F.3d 787 (5th Cir. 2011) ...............................................................................................25

*Hunton Energy Holdings, LLC v. HL Seawater Holdings, LLC*,
 539 F.Supp.3d 685 (S.D. Tex. Mar. 4, 2021) ......................................................................12

*Innova Hosp. San Antonio, Ltd. P'ship. v. Blue Cross & Blue Shield of Ga., Inc.*,
 892 F.3d 719 (5th Cir. 2018) ...............................................................................................13

*Johnson v. Johnson*,
 385 F.3d 503 (5th Cir. 2004) ...............................................................................................13

*Lormand v. US Unwired, Inc.*,
 565 F.3d 228 (5th Cir. 2009) ...............................................................................................13

*Mann Frankfort Stein & Lipp Advisors, Inc. v. Fielding*,
 289 S.W.3d 844 (Tex. 2009)................................................................................................20

*Memon v. Allied Domecq QSR*,
 385 F.3d 871 (5th Cir. 2004) ...............................................................................................13

*NRT Tex. LLC v. Wilbur*,
 No. 22-cv-02847, 2022 WL 5434332 (S.D. Tex. Sept. 7, 2022)...........................................23

*Phazr, Inc. v. Ramakrishna,*
No. 3:19-CV-01188-X, 2019 WL 5578578 (N.D. Tex. Oct. 28, 2019) ......................18, 19, 20

*Red Ball Tech. Gas Servs., LLC v. Precise Standards & Sols., Inc.,*
No. 4:17–CV–2090, 2018 WL 276467 (S.D. Tex. Jan. 3, 2018) (Ellison, J.).........................12

*U.S. ex rel. Riley v. St. Luke's Episcopal Hosp.,*
355 F.3d 370 (5th Cir. 2004) .................................................................................................24

*Sears Authorized Hometown Stores, LLC v. Y&O WF, LLC,*
No. 7:18-CV-83, 2018 WL 6608354 (N.D. Tex. Nov. 29, 2018) ...........................................14

*ShiftKey, LLC v. NurseIO, LLC,*
No. 4:25-cv-00521-ALM, Dkt. 55 (E.D. Tex. July 28, 2025)................................................22

*Smith Int'l., Inc. v. Egle Grp., LLC,*
490 F.3d 380 (5th Cir. 2007) .................................................................................................20

*T-N-T Motorsports, Inc. v. Hennessey Motorsports, Inc.,*
965 S.W.2d 18 (Tex. App.—Houston [1st Dist.] 1998, no pet.)..............................................14

*TFC Partners, Inc. v. Stratton Amenities, LLC,*
No. 1:19-CV-58, 2019 WL 369152 (W.D. Tex. Jan. 30, 2019) .............................................14

*Topstone Commc'ns, Inc. v. Xu,*
729 F.Supp.3d 701 (S.D. Tex. 2024) (Ellison, J.).................................................................17

*Utex Indus., Inc. v. Wiegand,*
No. CV H-18-1254, 2020 WL 873985 (S.D. Tex. Feb. 21, 2020) .........................................16

*Vianet Grp. PLC v. Tap Acquisition, Inc.,*
No. 3:14-CV-3601-B, 2016 WL 4368302 (N.D. Tex. Aug. 16, 2016)....................................16

**Statutes**

18 U.S.C. § 1836..................................................................................................................13

18 U.S.C. § 1839(5) .............................................................................................................14

Tex. Bus. & Com. Code § 15.51(c) .......................................................................................23

Tex. Civ. Prac. & Rem. Code § 134A.002(3)........................................................................14

Tex. Bus. & Com. Code § 15.50(a) .......................................................................................20

**Other Authorities**

Federal Rule of Civil Procedure 8(a) ...............................................................................12, 17

Federal Rule of Civil Procedure 12(b)(6) ..................................................................................8, 12

## I.    SUMMARY OF THE ARGUMENTS

This case arises from the "brazen and calculated"—premeditated—plan by Defendants to misappropriate trade secrets, solicit key employees, and compete unfairly to give Recess an improper head start in the nascent functional beverage industry.  Compl. ¶ 1.  Nutrabolt's Complaint more than plausibly alleges the systematic theft of confidential documents that reflect Nutrabolt's future go-to-market plans: it irrefutably proves it.  Defendants' Motion improperly ignores dozens of pages of detailed factual allegations and instead advances competing inferences inappropriate at the Rule 12 stage in an effort to distract from the incontrovertible truth: that they were caught red-handed with the secret recipe to successfully launch a global functional beverage sensation.

With the very go-to-market plans that helped Nutrabolt achieve one of the most effective brand launches in beverage history, Kyle Thomas—assisted by Madison Mathews and Terrance Moore, Jr. and *while still employed by Nutrabolt*—secretly extracted Nutrabolt's most sensitive strategies, financial data, and customer plans and funneled them to himself and to Recess, demonstrating to Recess's CEO, Benjamin Witte (at a meeting funded on Nutrabolt's dime), how that stolen blueprint would be used to accelerate and expand Recess's position in the market.  Compl. ¶¶ 5, 8–9, 71.

In addition to violating the clear restrictive covenants of their NDAs and Incentive Unit Grant Agreements, the Individual Defendants' actions amounted to a breach of their fiduciary duties.  Thomas used Nutrabolt materials and resources to directly benefit Recess.  Compl. ¶¶ 4, 68, 74–75.  Thomas worked for Recess while he was still employed by Nutrabolt.  Compl. ¶¶ 8, 73; *see also* ECF 56-1, Witte Decl. ¶ 26 (confirming Thomas accepted Recess's employment offer in September 2025).  Thomas actively solicited Nutrabolt employees to work at Recess while still employed by Nutrabolt.  Compl. ¶¶ 10–11, 77–82.

The Complaint details a coordinated scheme by the Defendants.  Their surreptitious actions involved pre-resignation planning and negotiations with Recess while still employed (Compl. ¶¶ 3–4, 66–67, 81), misuse of Nutrabolt's employees, systems, and data to conduct competitive

intelligence for Recess (Compl. ¶¶ 6, 68–70), systematic transfer of highly confidential documents to personal and third-party email accounts (Compl. ¶¶ 5, 71, 88), presentation of Nutrabolt's confidential strategies to Recess (Compl. ¶¶ 74–75), and targeted solicitation of Nutrabolt's key employees, including Moore and Mathews (Compl. ¶¶ 77–82, 86). These allegations reflect not lawful competition, but coordinated misconduct undertaken while Defendants owed contractual and fiduciary duties to Nutrabolt. This was no accident.[1]

The Individual Defendants' Motion to Dismiss should be denied. Nutrabolt has provided more than enough facts to plausibly allege claims for trade secret misappropriation, breach of restrictive covenants, and breach of fiduciary duties against the Individual Defendants.

## II.   NATURE AND STAGE OF THE PROCEEDING

Nutrabolt filed its Complaint against Kyle Thomas ("Thomas"), Terrence Moore, Jr., ("Moore"), and Madison Mathews ("Mathews") (collectively, the "Individual Defendants"), and Drink Recess, Inc. ("Recess") on February 27, 2026. ECF 1. In the Complaint, Nutrabolt asserted the following claims against the Individual Defendants for which it is seeking damages and equitable relief: (1) trade secret misappropriation under the Defend Trade Secrets Act (Count I); (2) breach of the Incentive Unit Grant Agreements (Count II); (3) breach of the NDAs (Count III); and (4) violation of the Texas Uniform Trade Secrets Act (Count VIII). Nutrabolt has also asserted a claim for breach of an employee's fiduciary duties against Thomas and Moore (Count IV) and a claim for breach of an officer's fiduciary duties against Thomas (Count V). Nutrabolt filed a motion for a temporary restraining order and preliminary injunction seeking emergency relief from the Individual Defendants on March 18, 2026. ECF 22. The Individual Defendants filed a Motion to Dismiss ("Motion") on March 30, 2026. ECF 47.

## III.   STATEMENT OF ISSUES TO BE RULED ON

The Court must evaluate the sufficiency of Nutrabolt's claims for relief pursuant to Federal Rule of Civil Procedure 12(b)(6).

---

[1] *See also* ECF 56-1, Witte Decl. at ¶¶ 24–26, 28, 30; ECF 55-2, Thomas Decl. at ¶¶ 16, 21, 26–27 (affirming that these actions occurred).

IV.    **STATEMENT OF FACTS**

Nutrabolt is a premier developer, manufacturer, and distributor of performance nutrition products and functional beverages and it has spent years investing millions of dollars in its business development and in its people.  Compl. ¶¶ 32, 45, 48.  Nutrabolt is a global purveyor in the Functional Beverage and Active Nutrition categories and is well known for its C4 and Bloom beverage lines, which target health-conscious consumers seeking functional benefits from their beverages.  Compl. ¶ 34.  Nutrabolt's Bloom products, including Bloom Sparkling Energy and Bloom Pop, are distributed and available at major retail channels including Walmart, Target, Amazon, and other major grocery chains.  Compl. ¶ 36.  Bloom products are stocked in functional beverage and wellness sections and shelves at retailers.  Compl. ¶ 36.

Recess is also a functional beverage company that manufactures and markets products such as Mood sparkling waters and beverage powders, Zero Proof Craft Mocktails, and sparkling waters infused with hemp and adaptogens.  Compl. ¶¶ 37–38.  When health-conscious consumers visit retail locations to purchase functional beverages, their options include Bloom and Recess products. Recess and Nutrabolt are direct competitors to attract the same shelf space and sales in the functional beverage category.  Compl. ¶ 37.

### A.  The Individual Defendants

Thomas was employed at Nutrabolt from May 2021 to October 17, 2025 where he held the role of Global Chief Commercial Officer ("CCO") at the time of his departure, one of the most senior executive positions.  In his position as CCO, Thomas had direct responsibility for Nutrabolt's commercial operations across all product lines and had access to Nutrabolt's most sensitive and confidential business information and plans.  Compl. ¶ 39, 42.  As part of Thomas's role, he had extensive engagement with Nutrabolt's key employees, including direct reports such as Moore and Mathews, and other senior executives.  Compl. ¶ 43.

Moore worked for Nutrabolt from June 2019 through November 3, 2025 and held the title of Vice President of Strategy and Insights at the time of his resignation.  Compl. ¶ 40.  Through his work at Nutrabolt, Moore had access to Nutrabolt's confidential business information, strategic

planning, market intelligence, consumer insights, category growth trends, shopper insights, business intelligence data, and product development strategies.  Compl. ¶¶ 40, 42.

Mathews was employed at Nutrabolt from May 2018 through November 5, 2025 and her role at the time of her resignation was Vice President of Commercial Operations.  Compl. ¶ 41. Mathews's work at Nutrabolt gave her access to Nutrabolt's sensitive and confidential business information and her responsibilities included translating Nutrabolt's commercial strategies into operational execution, coordinating brand activations and retail programs, Direct Store Delivery operations, and supply chain planning for commercial initiatives.  Compl. ¶¶ 41–42.

When Thomas, Mathews, and Moore began their employment relationships with Nutrabolt, they each signed a Non-Disclosure, Non-Competition and Non-Solicitation Agreement (NDA). Compl. ¶ 49; Compl. Ex. 1–3.  On multiple occasions during their employment, the Individual Defendants executed Incentive Unit Grant Agreements with Nutrabolt as consideration for receiving equity incentive units.  Compl. ¶ 57.  Under both of these agreements, the Individual Defendants consented to substantially identical restrictive covenants that included non-compete, non-solicit, and confidentiality provisions.  Compl. ¶¶ 50–54, 58–61.  As experienced professionals, Nutrabolt had no doubt that the Individual Defendants appreciated the promises they made when they entered into these valid and reasonable agreements.

**B.  Thomas's Business Activities With Recess While Employed by Nutrabolt**

While still employed by Nutrabolt, Thomas used Nutrabolt's resources to conduct competitive research to benefit Recess.  Compl. ¶ 68.  Thomas forwarded at least fourteen highly confidential documents containing Nutrabolt's confidential information and trade secrets to his personal email address, his wife's email address and directly to his Recess-issued email address between September 18 and October 14, 2025.  Compl. ¶ 71.  Thomas began working for Recess during the week of October 6, 2025 even though he was still employed by Nutrabolt at that time. Compl.  ¶ 73.  Taking advantage of his dual role, Thomas used Moore, Mathews, and other Nutrabolt employees as resources to compile Nutrabolt's confidential trade secrets and feed that information to Recess.  Compl. ¶¶ 68, 70, 74–75.  Thomas used Nutrabolt's confidential

information to create a presentation "Agenda for NYC," which contained extensive Nutrabolt trade secrets such as Nutrabolt's commercial organizational vision, specific account strategies for eight of its retailers, collaborative business planning processes, innovation planning processes, and U.S. Beverage Planning Timelines.  Compl. ¶ 74.  Thomas then traveled to New York on Nutrabolt's dime to deliver this presentation of Nutrabolt's information to Recess.  Compl. ¶ 75.

After Thomas had begun working for Recess and prior to his last day working at Nutrabolt, Thomas sent departure emails to Nutrabolt employees designed to solicit them to leave Nutrabolt.  Compl. ¶ 86.  Thomas solicited Mathews and Moore to leave Nutrabolt and join him at Recess.  Compl. ¶¶ 80–83.  Thomas also attempted to persuade his Executive Assistant to leave Nutrabolt for Recess.  Compl. ¶¶ 77–79.  Thomas's solicitation actions taken while he was an agent of Recess acting on behalf of Recess contravened Section 5(c) of the NDA that prohibited Thomas from inducing or attempting "to induce any employee of the Company to leave the employ of the Company, or "solicit, employ, or otherwise engage any Company Employee."  Compl. ¶ 52; Compl. Ex. 1.  Thomas's solicitation actions similarly violated Section 6(c) of the Grant Agreements, which proscribed Thomas from "otherwise assist[ing] any person or entity in identifying, hiring, or soliciting" Nutrabolt employees."  Compl. ¶ 87, 149.

### C.  Moore Misappropriated Nutrabolt's Confidential Information

Moore sent confidential Nutrabolt information to his personal email address as a means to retain Nutrabolt's trade secrets for his own use and for Recess's benefit.  Compl. ¶¶ 13, 88–90.  He similarly assisted Thomas in compiling Nutrabolt trade secrets for Recess's benefit.  Compl. ¶¶ 6, 68.

### D.  Recess's Intentional Interference

Recess is a sophisticated company that cannot plausibly assert it did not understand that hiring executives such as Thomas from a competitor would implicate non-competition and non-solicitation obligations.  Compl. ¶ 97.  Recess acted in concert with Thomas to solicit Thomas's Executive Assistant to join Recess because it issued a formal employment offer letter to Thomas's Executive Assistant without so much as an interview or asking for a resume or job application.

Compl. ¶¶ 77, 79.

Recess was certainly aware of Mathews's and Moore's non-competition and non-solicitation obligations because Thomas, who himself was subject to the exact same obligations, and who was already working for Recess at this time, played a direct role in hiring Mathews and Moore. Compl. ¶¶ 80–82, 98–100. On October 15, 2025, Benjamin Witte, Recess's Chief Executive Officer, Thomas, Mathews, and Moore had dinner together while attending the National Association of Convenience Stores trade show in Chicago at the Purple Pig. Compl. ¶ 81; Recess Mot. to Dismiss at 6. Upon information and belief, Witte and Thomas acted as agents of Recess and solicited Mathews and Moore to join Recess, which became apparent due to the suspect timing in which Mathews tendered her resignation two days later on October 17 and Moore tendered his resignation shortly the week after on October 21. Compl. ¶ 82.

Benjamin Witte has publicly admitted that Recess hired Thomas to copy and implement the strategies he and Nutrabolt used to scale C4 Energy and Bloom while at Nutrabolt. Compl. ¶ 104. Recess's conduct was intended to harm Nutrabolt as it has aimed to gain competitive advantage by accessing Nutrabolt's confidential information, strategic insights, customer relationships, employee know-how, and institutional knowledge from individuals who are contractually bound not to compete with or work for Nutrabolt's competitors. Compl. ¶ 103.

## V.     LEGAL STANDARD

Under Federal Rule of Civil Procedure 8(a), a complaint must contain "a short, plain statement of the claim showing that the pleader is entitled to relief." Fed. R. Civ. P. 8(a)(2). Federal Rule 12(b)(6) provides for the dismissal of a complaint when a defendant shows that the plaintiff has failed to state a claim for which relief can be granted. Fed. R. Civ. P. 12(b)(6). When considering a motion to dismiss, courts must "construe facts in the light most favorable to the nonmoving party." *Red Ball Tech. Gas Servs., LLC v. Precise Standards & Sols., Inc.*, No. 4:17–CV–2090, 2018 WL 276467, at *2 (S.D. Tex. Jan. 3, 2018) (Ellison, J.) (quoting *Turner v. Pleasant*, 663 F.3d 770, 775 (5th Cir. 2011)); *see also Hunton Energy Holdings, LLC v. HL Seawater Holdings, LLC*, 539 F.Supp.3d 685, 691 (S.D. Tex. Mar. 4, 2021) (same). "A claim has

facial plausibility when the plaintiff pleads factual content that allows the court to draw the reasonable inference that the defendant is liable for the misconduct alleged." *Ashcroft v. Iqbal*, 556 U.S. 662, 678 (2009).

"The court should not dismiss [a] claim unless the plaintiff would not be entitled to relief under any set of facts or any possible theory that [it] could prove consistent with the allegations in the complaint." *Memon v. Allied Domecq QSR*, 385 F.3d 871, 873 (5th Cir. 2004) (citations and quotations omitted); *see Bell Atl. Corp. v. Twombly*, 550 U.S. 544, 563 n.8 (2007) (holding "when a complaint adequately states a claim, it may not be dismissed based on a district court's assessment that the plaintiff will fail to find evidentiary support for his allegations or prove his claim to the satisfaction of the factfinder."). Moreover, "'information and belief' pleadings are generally deemed permissible under the Federal Rules, especially in cases in which the information is more accessible to the defendant." *Johnson v. Johnson*, 385 F.3d 503, 531 n.19 (5th Cir. 2004); *see also Dominguez v. Target Corp.*, No. 5:18-CV-23, 2019 WL 1004569, at *2 (S.D. Tex. Feb. 8, 2019) (same). When evaluating a 12(b)(6) motion to dismiss, the Fifth Circuit's "principle [is] that when discoverable information is in the control and possession of a defendant, it is not necessarily the plaintiff's responsibility to provide that information in [its] complaint." *Innova Hosp. San Antonio, Ltd. P'ship. v. Blue Cross & Blue Shield of Ga., Inc.*, 892 F.3d 719, 730 (5th Cir. 2018). Because a complaint must be liberally construed in favor of the plaintiff, "motions to dismiss under Rule 12(b)(6) 'are viewed with disfavor and are rarely granted.'" *Lormand v. US Unwired, Inc.*, 565 F.3d 228, 232 (5th Cir. 2009) (quoting *Test Masters Educ. Servs., Inc. v. Singh*, 428 F.3d 559, 570 (5th Cir. 2005)).

## VI.    UNDERLINE[ARGUMENT]

### A. Nutrabolt Has Alleged A Plausible Trade Secrets Claim Against Defendants.

To state a claim under the DTSA, a plaintiff must allege: (1) a trade secret; (2) misappropriation; and (3) use in interstate commerce. *See* 18 U.S.C. § 1836; *Blue Star Press, LLC v. Blasko*, No. SA-17-CA-111-OLG (HJB), 2018 WL 1904835, at *2 (W.D. Tex. Mar. 6, 2018). The DTSA's definition of "misappropriation" includes acquisition or use of trade secrets with the

knowledge that they were acquired by improper means. *See* 18 U.S.C. § 1839(5). "Improper means" includes "theft, bribery, misrepresentation, breach or inducement of a breach of a duty to maintain secrecy, or espionage through electronic or other means." *Id.* at § 1839(6); *see also North Am. Deer Registry, Inc.*, No. 4:17-CV-00062, 2017 WL 2120015, at *6 (E.D. Tex. May 16, 2017) (discussing elements).

Under the TUTSA, "'misappropriation' means [the] acquisition of a trade secret of another by a person who knows or has reason to know that the trade secret was acquired by improper means; or disclosure or use of a trade secret of another without express or implied consent . . . ." Tex. Civ. Prac. & Rem. Code § 134A.002(3). Plaintiff "[is] not obligated to allege that [defendant] used its trade secrets" and "[can] properly state a claim under TUTSA by alleging that [defendant] acquired its trade secrets by improper means[.]" *Sears Authorized Hometown Stores, LLC v. Y&O WF, LLC*, No. 7:18-CV-83, 2018 WL 6608354, at * 4 (N.D. Tex. Nov. 29, 2018), *report and recommendation adopted*, No. 7:18-CV-83, 2018 WL 6603813 (N.D. Tex. Dec. 17, 2018); *Gordon v. Mathieson*, No. 4:18-CV-1111, 2018 WL 3105115, at *5 (S.D. Tex. June 25, 2018) ("Under the Texas Uniform Trade Secrets Act, misappropriation can be shown by acquisition, even without a demonstration of use.").

TUTSA provides for relief when a plaintiff establishes that it is the owner of a trade secret and that its trade secret was misappropriated by another. Tex. Civ. Prac. & Rem. Code § 134A.002(3); *see T-N-T Motorsports, Inc. v. Hennessey Motorsports, Inc.*, 965 S.W.2d 18, 22 (Tex. App.—Houston [1st Dist.] 1998, no pet.) ("Items such as customer lists, pricing information, client information, customer preferences, buyer contacts, market strategies, blueprints, and drawings have been shown to be trade secrets."); *Genesco Sports Enter. v. White*, No. 3:11-CV-1345, 2011 WL 6593415, at *8 (N.D. Tex. Oct. 27, 2011) ("Customer lists, client information, customer preferences, buyer contacts, pricing information, marketing strategies, blueprints, and drawings have all been recognized as trade secrets."); *TFC Partners, Inc. v. Stratton Amenities, LLC*, No. 1:19-CV-58, 2019 WL 369152, at *3 (W.D. Tex. Jan. 30, 2019) ("At this stage in the litigation, [plaintiff] has made a prima facie showing that its pricing structures, customer lists,

policies and procedures, financial information, budgets, employee compensation structures, labor distribution reports, and marketing strategies are entitled to trade-secret protection."); *BRG Insurance Solutions, LLC v. O'Connell*, No. 3:16-CV-2448, 2017 WL 7513649, at \*8 (N.D. Tex. July 18, 2017) (client list, prospective client lists, client contact information, client employee data, client preferences, and client proposal materials properly pled as trade secrets under the DTSA and TUTSA).  The Complaint alleges precisely these types of protectable trade secrets—including detailed pricing strategies, financial forecasts, customer and retailer-specific plans, marketing strategies, and long-range business plans—which Defendants systematically extracted and used to benefit a direct competitor.  Compl. ¶¶ 5, 42, 71, 88, 129, 196.

**1. Nutrabolt Has Identified Its Trade Secrets With Reasonable Particularity.**

Nutrabolt's Complaint has undoubtedly identified the trade secrets Defendants misappropriated with reasonable particularity; Individual Defendants' half-hearted attempt to assert otherwise is unsupported by both the facts and the law.  The Complaint doesn't speak in generalities—it details the exact trade secrets each Defendant stole and leveraged for Recess's gain and attaches over a dozen examples of the trade secrets Nutrabolt has been able to prove *–to date—* that the Individual Defendants have stolen.  Compl. ¶¶ 71, 88;  *see also* Compl. ¶¶ 131–132.  The Complaint details each file Thomas stole, the date he stole it, how he stole it, and what sensitive information each contained.  Compl. ¶ 71.  The Complaint likewise details the same for Moore and Mathews.  Compl. ¶¶ 9, 88–90.  For example, the Complaint alleges that Moore sent confidential Nutrabolt information and files to his personal email address; and the Complaint alleges how Mathews disclosed Nutrabolt's "ICE" presentation to Thomas who then plugged that information into the "Agenda for NYC" presentation that he presented—disclosed—to Recess. Compl. ¶¶ 9, 88–90.

These allegations are more than sufficient to withstand a motion to dismiss.  "Texas law does not require great detail in the definition of a trade secret.  To survive a motion to dismiss, "[i]t is enough for a plaintiff to identify specific groupings of information that contain trade secrets, identify the types of trade secrets contained in the groupings, and explain how the alleged trade

secrets were maintained and treated as trade secrets." *Utex Indus., Inc. v. Wiegand*, No. CV H-18-1254, 2020 WL 873985, at *10 (S.D. Tex. Feb. 21, 2020) (citation and quotation omitted).  *Utex* held that the "eight categories" of trade secrets, which included "methods and systems" for packaging, "manufacturing data, cost of production," "sales data," and "budget information related to Utex products," "sufficiently specific to identify the types of information and possible trade secrets within." *Id.*  That "the details of [the plaintiff's] manufacturing materials, processes, and ingredients may contain trade secrets is self-evident, and it is well established that customer information and sales data may be trade secrets." *Id.*; *see also Vianet Grp. PLC v. Tap Acquisition, Inc.*, No. 3:14-CV-3601-B, 2016 WL 4368302, at *19–20 (N.D. Tex. Aug. 16, 2016) (holding that the plaintiff's identification of categories of trade secrets such as "[a]n excel spreadsheet of [its] customer forecasts" and "Marketing material" was reasonably particular).  So, too, here.

Courts in this district have held that at the pleading stage, trade secrets need not be described in such detail that it would "defeat the entire purpose of attempting to protect those trade secrets in the first place." *Bureau Veritas Commodities and Trade, Inc. v. Cotecna Inspection SA*, No. 4:21-CV-00622, 2022 WL 912781, at *6–7 (S.D. Tex. Mar. 29, 2022) (citation omitted) (holding that plaintiff met its burden at the pleading stage to specify its trade secrets, including "profit and loss information, financial information, business plans, strategic growth strategies, sales information, operational weaknesses, marketing strategies, customer information, pricing, pricing strategies, sales volume, operational plans, [and] employee compensation."). Arguments that the categories were "vague" and "broad," identical to Defendants' arguments here, were wholesale disregarded as a basis to dismiss the claims.  *Id*; *see also Downhole Tech. LLC v. Silver Creek Servs. Inc.*, No. H–17–0020, 2017 WL 1536018, at *4 (S.D. Tex. Apr. 27, 2017) (holding plaintiff had set forth sufficient factual allegations to support its trade secrets misappropriation claims under the TUTSA and "no more definite statement [was] required" because plaintiff's pleadings contained sufficiently defined categories to enable defendants to respond to the

allegations)[2]; *see also Broadleaf IT, LLC v. Walley*, No. 4:24-CV-00303, 2024 WL 4329145, at *4–5 (S.D. Tex. Aug. 17, 2024) (holding that defendants' arguments about lack of specificity effectively demanded a heightened pleading standard that was not applicable to misappropriation of trade secrets claims and noting the absence of argument from defendants that the complaint did not provide fair notice of plaintiff's claims).

Defendants' contention that "Nutrabolt has made no effort to identify with any reasonable particularity what trade secrets it alleges were used or disclosed by" them is unavailing.[3]  Mot. 7. That argument ignores the nearly dozen relevant allegations of the complaint (Compl. ¶¶ 5, 13, 42, 44, 71, 88–90, 129, 196) and instead myopically focuses on just two paragraphs which summarized the specific trade secrets Defendants stole.  *See* Mot. at 7 (citing Compl. ¶¶ 129, 196). Unsurprisingly, therefore, the caselaw Defendants rely on is readily distinguishable.  *See, e.g., Clearline Techs. Ltd. v. Cooper B-Line, Inc.*, No. CIV.A. H-11-1420, 2012 WL 43366, at *11 (S.D. Tex. Jan. 9, 2012) (Ellison, J.) (the plaintiff "alleges only that Cooper B–Line 'has used Clearline's trade secrets, including but not limited to technical and financial information.'  There is *no explanation* of the technical and financial information that constitutes a trade secret.") (emphasis added); *Topstone Commc'ns, Inc. v. Xu*, 729 F.Supp.3d 701, 706 (S.D. Tex. 2024) (Ellison, J.) (finding it was a "close case" even where the plaintiff made two rote allegations that "Defendants 'stole or attempted to steal Topstone's customers informing them to order their products directly from ZCTT,' and, relatedly, 'misappropriated Topstone's customers list and have or are attempting to divert purchase orders from Topstone's customers'").  In short, the Complaint has provided substantially more than the level of detail Rule 8 requires—and far more than what Defendants pretend is missing.

---

[22] Tellingly, the Defendants had no problem identifying the trade secrets when they represented to this court that they had undertaken substantial forensic efforts to remove those documents Plaintiff attached to the Complaint from their devices and systems.

[3] The Individual Defendants' contention that Nutrabolt does not specify "which, or how many, or those documents it contends to constitute trade secrets" is similarly unavailing because Nutrabolt is not obligated to provide such minute details at this early stage of the litigation. *See Twombly*, 550 U.S. at 570 (Rule 8(a) "do[es] not require heightened fact pleading of specifics, but only enough facts to state a claim to relief that is plausible."). Mot. 8 n.2.

## 2. Nutrabolt Has Plausibly Alleged Numerous Acts of Trade Secret Misappropriation.

The Complaint details specific acts of misappropriation of trade secrets by each Individual Defendant. For example, Nutrabolt alleges that Thomas—with help from Moore and Mathews at a time they knew he was going to Recess and had discussed employment at Recess with him—used Nutrabolt's trade secrets to create the "Agenda for NYC" presentation that Thomas presented—**disclosed**—to Recess. Compl. ¶¶ 6, 9; *see also* Compl. ¶¶ 74–75 (detailing the "Agenda for NYC" presentation).

Accordingly, Nutrabolt has made "a threshold showing of the actual acquisition, disclosure, [and] use of [its] trade secret" by the Defendants. *Phazr, Inc. v. Ramakrishna*, No. 3:19-CV-01188-X, 2019 WL 5578578, at *3 (N.D. Tex. Oct. 28, 2019); *see also Clean Energy v. Trillium Transp. Fuels, LLC*, No. CV H-19-244, 2019 WL 1522521, at *3 (S.D. Tex. Mar. 22, 2019) (denying a motion to dismiss on a Trade Secrets Act claim where the complaint alleged that the individual defendant "accessed and emailed himself" protected documents and that the corporate defendant actually used the trade secrets to "solicit business" from the plaintiff's customers); *BRG Ins. Sols., LLC v. O'Connell*, No. 3:16-CV-2448, 2017 WL 7513649, at *8 (N.D. Tex. 2017) (denying a motion to dismiss on a Trade Secrets Act claim where the individual defendants actually used the plaintiff's resources "to assist competitors" and disclosed confidential information "for use in stealing clients").

In arguing otherwise, Defendants again attempt to divert attention from the plain facts of the Complaint: they disingenuously point to the general allegations under the DTSA and TUTSA claims for relief and ignore the complaint's preceding dozens of allegations specifically recounting Defendants' specific acts of trade secret misappropriation. Defendants contend that the "allegation[s]" in Paragraphs 131, 136, 197, 201 of the Complaint are "not enough to sustain a claim of misappropriation against any Individual Defendant." Mot. 8. Had that been all Nutrabolt alleged, Nutrabolt might have been inclined to agree. But, as shown above and alleged in detail

- 12 -

in the Complaint, Nutrabolt has alleged a plausible claim of trade secret misappropriation against each Defendant.  "Read in the light most favorable to [Nutrabolt], the Complaint satisfies the 12(b)(6) pleading standard as to the 'knowledge' and 'improper means' elements of 'misappropriation,' as defined under the DTSA." *Clean Energy v. Trillium Transp. Fuels LLC*, No. CV H-19-244, 2019 WL 1522521, at *3 (S.D. Tex. Mar. 22, 2019).[4]

The caselaw Defendants rely on (Mot. 8–9) is distinguishable because they either involved cases where a plaintiff merely recited the elements of a trade secret claims, and/or involved reliance solely in the inevitable disclosure doctrine.  *Phazr*, which Defendants rely on heavily, held that the plaintiff "has not adequately alleged the defendants' misappropriation of its trade secrets" because it "merely recite[d] the elements of a Trade Secrets Act claim as its allegations." *Phazr, Inc. v. Ramakrishna*, No. 3:19-CV-01188-X, 2019 WL 5578578, at *4 (N.D. Tex. Oct. 28, 2019).  Unlike here, the plaintiff in *Phazr* had not plausibly "shown that the individual defendants have either disclosed or used one of [the plaintiff's] trade secrets in their employment at [their new employer]."). *Id.*  Defendant's reliance on *DISA Glob. Sols., Inc.* is likewise misplaced; there, unlike Nutrabolt, the plaintiff "fail[ed] to allege facts showing that [the former employee] shared the . . . [plaintiff's trade secret] materials with [his new employer] or used them while at [his new employer]."). *DISA Glob. Sols., Inc. v. ASAP Drug Sols., Inc.*, No. 4:18-cv-2849, 2019 WL 13030151, at *4 (S.D. Tex. Sept. 27, 2019).  Here, by contrast, the Complaint alleges precisely how Defendants took, transmitted, and used Nutrabolt's trade secrets for Recess's benefit, easily clearing the plausibility threshold. Not speculation – reality.

### 3. Nutrabolt Has Plausibly Alleged That Its Trade Secrets Were Used In Interstate Commerce.

Defendants implausibly try to claim that Nutrabolt—a global company with products in dozens of states—fails to cite to any authority that shows Nutrabolt's allegation in Paragraph 129 of the Complaint are inadequate to plead its trade secrets were used in interstate commerce.

---

[4] *See also* ECF 56-1, Bandemer Decl. ¶ 37; Jimenez ¶¶ 10–11; Tian Decl. ¶¶ 10–11 (affirming that the misappropriated documents were found on Recess's system).

Indeed, the caselaw it *has* recited shows that, on a motion to dismiss, courts "assume as true . . . claims regarding: (1) the existence of its trade secrets; and (2) that they are used in, or intended for use in, interstate commerce." *Phazr, Inc.*, 2019 WL 5578578, at *4 n. 27.

In any event, Nutrabolt has alleged that it is a "global and premier developer, manufacturer, and distributor of performance nutrition products and functional beverages" (Compl. ¶ 32) and that its C4 and Bloom "products are distributed through major retail channels including Walmart, Target, Amazon, and major grocery stores." Compl. ¶ 36; *see also* Compl. ¶ 9. Because Nutrabolt has alleged that Defendants stole its trade secrets relating to its C4 and Bloom products—which it has alleged are sold in interstate commerce—Nutrabolt has plausibly alleged this element of a misappropriation claim.

### B. Plaintiffs Plausibly Allege Breach of Contract

Nutrabolt has plausibly alleged a breach of contract claim despite the Individual Defendants' meritless contentions. The elements of a breach of contract claim are: (1) the existence of a valid contract; (2) performance or tendered performance by the plaintiff; (3) defendant's breach; and (4) damages. *Smith Int'l., Inc. v. Egle Grp., LLC*, 490 F.3d 380, 387 (5th Cir. 2007). Under Section 15.50(a) of the Texas Business and Commerce Code, a covenant not to compete is enforceable when it (1) is ancillary to an otherwise enforceable agreement; and (2) contains reasonable limitations as to duration, geographic area, and scope of activity that impose no greater restraint than is necessary to protect the goodwill or other business interest of the promisee. Tex. Bus. & Com. Code § 15.50(a); *see Guy Carpenter & Co., Inc. v. Provenzale*, 334 F.3d 459, 464–65 (5th Cir. 2003). Although the Individual Defendants cite numerous cases invoking higher pleading standards in an effort to toss these claims out based on merits, at the motion to dismiss stage, Nutrabolt need only show that its claims to enforce the restrictive covenants in its employment agreements are plausible.[5] Nutrabolt has met this standard.

---

[5] The Individual Defendants cite to *DeSantis v. Wackenhut Corp.*, 793 S.W.2d 670 (Tex. 1990), *Mann Frankfort Stein & Lipp Advisors, Inc. v. Fielding*, 289 S.W.3d 844 (Tex. 2009), and *Cantor Fitzgerald, L.P. v. Ainslie*, 312 A.3d 674 (Del. 2024) to establish the legal standard for breaches of restrictive covenant. Mot. 11. However, all of these cases involved appeals of summary

1.  **The Individual Defendants Knowingly Entered Into Valid, Enforceable Contracts Containing Restrictive Covenants.**

"Texas law presumes a party has read and knows the terms of a contract that he has signed." *Daily Instruments Corp. v. Heidt*, 998 F.Supp.2d 553, 556 (S.D. Tex. 2014). The Complaint alleges the existence of valid and enforceable agreements, including NDAs and Grant Agreements supported by consideration. Compl. ¶¶ 49, 57, 64–65. Thomas, Mathews, and Moore each signed NDAs at the start of their employment with Nutrabolt in consideration of their employment. Compl. ¶ 49. Then, throughout the course of their employment with Nutrabolt, Thomas executed five Incentive Unit Grant Agreements, Moore executed three such agreements, and Mathews executed two such agreements in exchange for equity incentive units. Compl. ¶ 57, 64. By entering into the NDAs and Incentive Unit Grant Agreements, the Individual Defendants each consented *repeatedly* to assume non-compete obligations, non-solicitation obligations, and confidentiality obligations. Compl. ¶¶ 50, 52, 53–54, 58–61. Therefore, Nutrabolt properly asserted that the NDAs and Grant Agreements were validly entered into and, Thomas, Mathews, and Moore should have appreciated the terms of the contracts they entered into.

Nutrabolt did not pull its breach of restrictive covenant obligations out of a hat. Nutrabolt specified the relevant terms of the agreements in the Complaint, which sufficiently put the Individual Defendants on notice of Nutrabolt's breach of contract allegations. Nutrabolt outlined the relevant terms of the NDA, quoted its relevant provisions and restrictive covenants at length in the Complaint, and even appended the agreements to the Complaint. Compl. ¶¶ 50–54, 56; Compl. Ex. 1-3. Nutrabolt likewise identified the applicable provisions of the Incentive Unit Grant Agreements and quoted those provisions at length. Compl. ¶¶ 58–63. Based on the terms of these agreements, Nutrabolt sufficiently laid the foundation for its allegations that "The restrictive covenants the Former Executives agreed to are reasonable in scope, duration, and geographic reach" and that "They are narrowly tailored to protect Nutrabolt's legitimate business interests,

---

judgment motions. The standard of proof for a summary judgment motion is materially higher than the standard to survive a motion to dismiss and therefore is not determinative of the outcome here.

including protection of confidential information, customer relationships, employee relationships, and goodwill." Compl. ¶¶ 55, 65.

The Complaint alleges specific breaches. Thomas and Moore breached their contractual confidentiality obligations under both the Incentive Unit Grant Agreements by using and disclosing Nutrabolt's confidential information. Compl. ¶¶ 146, 158. Thomas breached his non-competition obligations by assuming the co-CEO role at Recess, a direct competitor, within the twelve-month restricted period. Compl. ¶ 94. Shortly thereafter, Mathews and Moore also breached their twelve-month non-competition obligations when they accepted employment with Recess immediately following their departures from Nutrabolt in November 2025. Compl. ¶¶ 147–48. Thomas breached his non-solicitation obligations under the agreements when he solicited Mathews and Moore to leave Nutrabolt and join Recess and again when he attempted to solicit his Executive Assistant and other Nutrabolt employees. Compl. ¶¶ 77, 80–83, 86. Nutrabolt thus provided clear, concrete facts to support its allegations that the Individual Defendants breached the restrictive covenants in their NDAs and Incentive Unit Grant Agreements.

## 2. The Individual Defendants' Reasonableness Arguments Are Inappropriate at This Juncture.

Whether the restrictive covenants are reasonable cannot be resolved at the pleading stage, particularly where the Complaint alleges the restrictive covenants are reasonable in scope and necessary to protect Nutrabolt's legitimate business interests. Compl. ¶¶ 55, 65. An inquiry into the enforceability of restrictive covenants is fact-intensive and requires discovery, both factual and expert; not merely a judgment based on the four corners of the complaint. *See ShiftKey, LLC v. NurseIO, LLC*, No. 4:25-cv-00521-ALM, Dkt. 55 (E.D. Tex. July 28, 2025) (denying defendant's motion to dismiss where plaintiff stated a plausible claim for misappropriation of plaintiff's confidential information and violation of post-employment restrictive covenants and disregarding defendant's arguments that disclaimed creating a contract of employment, that the contract lacked independent consideration beyond at-will employment, and that the contract imposed non-compete

restrictions without geographic limitations, rendering them facially overbroad and void).  Even if the Court assessed the enforceability of restrictive covenants at this premature stage, Tex. Bus. & Com. Code § 15.51(c) requires reformation, not dismissal of the claim.

Even so, the restrictive covenants' scope here is reasonable.  The geographic scope is reasonable because Nutrabolt is a global developer, manufacturer, and distributor of performance nutrition products and functional beverages.  Compl. ¶ 32.  The twelve-month non-compete timeframe is reasonable and comparable to other non-competes this Court has enforced.  *See, e.g., NRT Tex. LLC v. Wilbur*, No. 22-cv-02847, 2022 WL 5434332, at * 3 (S.D. Tex. Sept. 7, 2022) (enforcing one-year non-compete covenant); *Fantastic Sams Franchise Corp. v. Mosley*, No. 16–cv–2318, 2016 WL 7426403, at *4 (S.D. Tex., Dec. 23, 2016) (enforcing 2-year noncompete covenant).  Thomas's position as co-CEO of Nutrabolt's competitor, where he plays a leading role in guiding Recess to manufacture and market products in direct competition with Nutrabolt, makes the non-compete covenant applicable.  Compl. ¶ 94.  Enforcement of the agreements is critical to protect Nutrabolt's legitimate interest in its trade secrets and goodwill.

Nutrabolt's claims for breach of the Individual Defendants' restrictive covenants are plausible and persuasive.

### C. Plaintiffs Plausibly Allege Breach of Fiduciary Duty

The Complaint includes sufficient facts and allegations to show plausible claims for Moore's and Thomas's breaches of fiduciary duty.  "[T]he elements of a claim for breach of fiduciary duty are (1) the existence of a fiduciary duty, (2) breach of the duty, (3) causation, and (4) damages."  *First United Pentecostal Church of Beaumont v. Parker*, 514 S.W.3d 214, 220 (Tex. 2017).

### 1. Nutrabolt Pleads Sufficient Facts To Support a Plausible Breach of Fiduciary Duty Claim

Nutrabolt has pleaded plenty of facts to demonstrate a sufficient claim.  The Individual Defendants' wish for the court to consider "more likely explanations" that the Individual

Defendants left Nutrabolt ignores the standard for a motion to dismiss. Mot. 19. The "court should dismiss only if it appears beyond doubt that Plaintiff can prove 'no set of facts' in support of [their] claim." *U.S. ex rel. Riley v. St. Luke's Episcopal Hosp.*, 355 F.3d 370, 377 (5th Cir. 2004). The standard of review is not whether the Individual Defendants' excuses can explain away their actions, but rather whether Nutrabolt has plausibly alleged facts that, taken as true and with all reasonable inferences drawn in its favor, state a claim for relief.

The Complaint alleges that Thomas and Moore owed fiduciary duties of loyalty as senior executives. Compl. ¶ 163. Their Motion does not dispute this. Thomas and Moore then proceeded to breach those fiduciary duties. To excuse — not dispute — this, the Individual Defendants' reference *Navigant Consulting, Inc. v. Wilkinson* to argue that Thomas was not precluded from "making preparations for a future competing business venture" is entirely unconnected. 508 F.3d 277, 284 (5th Cir. 2007). Regardless, the Complaint asserts Thomas did far more than "prepare" to leave Nutrabolt. Thomas was employed by both Nutrabolt and Recess simultaneously. Compl. ¶¶ 7–8, 73. Likewise, Moore and Thomas used Nutrabolt resources for the benefit of Recess when they forwarded Nutrabolt files to their personal accounts to benefit their work at Recess. Compl. ¶¶ 68–70. Thomas solicited Nutrabolt employees to work for Recess while he was still employed at Nutrabolt. Compl. ¶¶ 10, 77–82, 86. These allegations establish independent wrongful conduct that alone are sufficient to withstand a motion to dismiss.

### 2. Nutrabolt's Claim is Not Preempted.

"A claim is not preempted [by the TUTSA] if the plaintiff is able to show the claim is based on facts unrelated to the misappropriation of the trade secret." *360 Mortgage Grp., LLC v. Homebridge Fin. Servs., Inc.*, No. 1:14-CV-847, 2016 WL 900577, at *6 (W.D. Tex. Mar. 2, 2016). Thus, "the issue becomes whether the allegations of trade secret misappropriation *alone* comprise the underlying wrong." *Id.* (quoting *Coulter Corp. v. Leinert*, 869 F.Supp. 732, 734 (E.D. Mo. 1994)) (emphasis added). Indeed, courts permit "separate causes of action to the extent that the causes of action have 'more' to their factual allegations than the mere misuse or misappropriation of trade secrets." *Id.* (quoting *Micro Display Sys. Inc. v. Axtel, Inc.*, 699 F.Supp.

202, 205 (D. Minn. 1988)).  For example, in *360 Mortgage Group, LLC*, the court found that "while [p]laintiff's breach of fiduciary duty claim depends in part on [defendant's] alleged use of trade secret information, there are facts unrelated to Plaintiff's misappropriation claim which could support Plaintiff's breach of fiduciary claim." 2016 WL 900577, at *7.  Moore's actions to support Thomas in using Nutrabolt's resources to conduct competitive research for Recess while they were still employed by Nutrabolt are actions that are factually unrelated to Nutrabolt's trade secrets misappropriation allegations.  Compl. ¶¶ 6, 68.  Also unrelated to Nutrabolt's trade secrets misappropriation claims are Thomas's solicitation of Nutrabolt employees, dual employment, and directing Nutrabolt employees to conduct research for the benefit of Recess while Thomas was still working at Nutrabolt.

Moreover, the "TUTSA 'does not affect . . . contractual remedies, whether or not based upon misappropriation of a trade secret[.]'" *360 Mortgage Group, LLC*, 2016 WL 900577, at * 7. "Because [p]laintiff's claim[] for . . . tortious interference with contract depend[s] on the existence and content of a written agreement, [that] claim[] [is] not preempted by [p]laintiff's claim for trade secret misappropriation under TUTSA." *Id.*  Nutrabolt's claims for breach of fiduciary duty are not preempted and are sufficient to withstand the motion to dismiss.

### D.  Plaintiffs Adequately Plead Damages and Harm

The Complaint adequately asserts damages and harm.  The Individual Defendants again confuse the standard at the motion to dismiss stage and argue Nutrabolt "must prove" damages in its pleading.  Mot. 20.  A plaintiff need not demonstrate in its pleading the precise amount of damages that it will recover at the end of a case after discovery and trial.  *See Harold H. Huggins Realty, Inc. v. FNC, Inc.*, 634 F.3d 787, 803 n.44 (5th Cir. 2011) (holding plaintiff's allegations of lost business and profits stated a plausible, non-speculative claim for damages).  Even so, the Complaint alleges harm including: loss of trade secrets; loss of employees; and competitive disadvantage; and damage to customer relationships.  Compl. ¶¶ 151, 166.  It further alleges ongoing irreparable harm resulting from Defendants' continued use of confidential information.

Compl. ¶ 21.  The agreements expressly recognize that such harm is irreparable and warrant injunctive relief and Nutrabolt points directly to this language in the Complaint.  Compl. ¶ 63.  The Individual Defendants ask "where are the damages" but turn a blind eye to Nutrabolt's clear assertions of damages and irreparable harm in the Complaint.[6]

### E. If There Are Any Deficiencies With the Complaint, this Court Should Grant Leave to Amend

Courts in the Fifth Circuit generally "afford plaintiffs at least one opportunity to cure pleading deficiencies before dismissing a case, unless it is clear that the defects are incurable or the plaintiffs advise the court that they are unwilling or unable to amend in a manner that will avoid dismissal."  *Great Plains Trust Co. v. Morgan Stanley Dean Witter & Co.*, 313 F.3d 305, 329 (5th Cir. 2002); *see also U. S. ex rel. Adrian v. Regents of the Univ. of Cal.*, 363 F.3d 398, 403 (5th Cir. 2004) ("Leave to amend should be freely given.") (internal citations omitted).  To the extent there are any deficiencies in the Complaint, Nutrabolt respectfully requests the Court to grant leave to amend.

### VII.  CONCLUSION

For all the foregoing reasons, Nutrabolt respectfully requests that this Court deny the Individual Defendants' Motion to Dismiss.

---

[6] In addition to the Complaint, Nutrabolt has argued at length that it has suffered irreparable harm as a consequence of the Individual Defendants' actions in its briefing in support of its Motion for a Temporary Restraining Order and Preliminary Injunction. *See* ECF-21; ECF-22; ECF-60; ECF-61.

Dated: April 20, 2026

OF COUNSEL:

KORAY J. BULUT (*Pro Hac Vice*)
*kbulut@goodwinlaw.com*
HAYES HYDE (*Pro Hac Vice*)
*hhyde@goodwinlaw.com*
**GOODWIN PROCTER LLP**
525 Market Street
San Francisco, California 94105
Tel:  (415) 733-6000

Respectfully Submitted,

LOCAL COUNSEL

By: */s/ Mary Goodrich Nix*
Mary Goodrich Nix
Attorney in charge
Texas Bar No. 24002694
Southern District of Texas Bar No. 595797
mnix@lynnllp.com
Sara Hollan Chelette
Texas Bar No. 24046091
schelette@lynnllp.com
**LYNN PINKER HURST &
SCHWEGMANN, LLP**
2100 Ross Avenue, Suite 2700
Dallas, Texas 75201
Telephone: (214) 981-3800

*Attorneys for Plaintiffs*

## CERTIFICATE OF SERVICE

The undersigned certifies on April 20, 2026, a true and correct copy of the foregoing

document was served on all counsel of record via the Court's CM/ECF system.

*/s/ Sara Hollan Chelette*
Sara Hollan Chelette

- 21 -