**UNITED STATES DISTRICT COURT**
**SOUTHERN DISTRICT OF TEXAS**
**HOUSTON DIVISION**

|  |  |  |
|---|---|---|
| WOODBOLT HOLDINGS, LLC, a Delaware Limited Liability Company, and WOODBOLT DISTRIBUTION, LLC d/b/a NUTRABOLT, a Delaware Limited Liability Company, | § § § § § § | |
| | § | Civil Action No. 4:26-CV-01669 |
| *Plaintiffs,* | § § | |
| v. | § § | |
| KYLE THOMAS, individually, TERRENCE MOORE, JR., individually, MADISON MATHEWS, individually, and DRINK RECESS, INC., a Delaware corporation, | § § § § § § | |
| *Defendants* | § | |

**INDIVIDUAL DEFENDANTS KYLE THOMAS, TERRENCE MOORE, JR., AND MADISON MATHEWS' POST-HEARING SUBMISSION IN OPPOSITION TO PLAINTIFFS' MOTION FOR TEMPORARY RESTRAINING ORDER AND PRELIMINARY INJUNCTION**

## I.   INTRODUCTION

Nutrabolt has not come close to meeting its burden to show any harm, much less the imminent and irreparable harm necessary to obtain injunctive relief. Nutrabolt admitted to this lack of harm at the Preliminary Injunction Hearing.

> THE COURT: How has this hurt your company?
>
> MR. BULUT: We are hoping that the Court will issue an injunction before it hurts and there's harm.

Ex. 1, Apr. 15, 2026 Hrg. Tr. at 48:25-49:2.[1] Nutrabolt made these admissions over six months after the Individual Defendants left to join Recess. How can the work the Individual Defendants are doing at Recess be causing harm that is ***imminent*** if Nutrabolt can't articulate any such harm ***after six months***? On this record, the Court can and should simply deny Nutrabolt's request for any preliminary injunctive relief.

Nevertheless, in accordance with the Court's instructions after the hearing, Defendants have made good-faith efforts to try and reach an agreement to allay any concern about any use of Nutrabolt's confidential or trade secret documents and information. *See* Ex. 2, Apr. 16, 2026 Minute Entry. Defendants have proposed a non-disclosure and non-use stipulation that is ***broader*** than the fifteen alleged confidential or trade secret document for which Nutrabolt submitted injunction proof. Defendants have also invited Nutrabolt to critique their prior forensic remediation efforts for Nutrabolt's asserted trade secret documents, and make concrete proposals of anything more that could or should be done. *See* Ex. 3, Conferral Emails, at 3-5.

Nutrabolt, for its part, continues to insist on (i) overbroad employment restrictions on all three Individual Defendants, (ii) non-solicit restrictions that were not directed by the Court and not even asserted in its injunction papers, and (iii) an unworkably vague definition of its alleged

---

[1] This is after Nutrabolt admitted during the first hearing that it has not seen any dramatic decrease in business since the Individual Defendants joined Recess in October-November of last year. Dkt. 55-1 at 15:8-14.

confidential information and trade secrets that also flips the burden of proof onto the defense. Yet, as to the 15 specific documents actually asserted as trade secrets in its Motion, Nutrabolt cannot point to anything concrete in terms what is inadequate about the way Defendants have already removed access to those materials and any potential to use them. The Individual Defendants have offered more than enough to address any real-world concerns around use and disclosures of materials that could actually be confidential and proprietary to Nutrabolt. We invite the Court to enter an order that recognizes all of these stipulations as binding on the Individual Defendants:

1. **Non-Disclosure & Non-Use:** The Individual Defendants agree and stipulate they will not use or disclose any confidential or proprietary documents, records, or electronic data belonging to Nutrabolt, including the documents identified as allegedly containing confidential and trade secret information in the Declarations of Gwen Greene (Dkt. 22-1) and Jason Cantelli (Dkt. 22-3) as Exhibits 12-26 (collectively, "Nutrabolt Confidential Information"). Nutrabolt Confidential Information shall not include any documents, data, or information that (i) is, or has become, publicly known through no fault of the Individual Defendants; (ii) is lawfully acquired by, or known to, the Individual Defendants independent of Nutrabolt; or (iii) was previously produced, disclosed, and/or provided by Nutrabolt without an obligation of confidentiality and not by inadvertence or mistake;

2. **Kyle Thomas Employment:** Individual Defendant Kyle Thomas agrees and stipulates that, in providing services (as an employee, contractor, advisor, or in any other capacity) to Recess, he shall not access, disclose, or use any Nutrabolt Confidential Information;

3. **Remedial Measures:** Upon identification by Nutrabolt of additional specific documents or data containing Nutrabolt Confidential Information that Nutrabolt reasonably believes may remain in any Individual Defendant's possession, the Individual Defendants stipulate that they will confer with Nutrabolt in good faith to attempt to develop a protocol for further remediation efforts; and

4. **Preservation of Evidence:** No provision herein obviates any obligations to preserve evidence, as consistent with the Federal Rules of Civil Procedure and all applicable law.

Upon entry of an Order formalizing these stipulations by the Individual Defendants, there will be no possible injunctive relief Nutrabolt could be entitled to under the evidentiary record before the Court. As such, the Court should deny Nutrabolt's Motion.

## II. ARGUMENTS

**A. Defendants' proposed stipulations offer *broader* non-disclosure and non-use obligations than Nutrabolt would be entitled to under its injunction evidentiary record.**

In its Motion, Nutrabolt presented evidence about the alleged secrecy and value of fifteen specific files. *See* Doc. 22-1 (Greene Decl.) at ¶¶ 22(a)-22(o), 24(a)-24(b); Doc. 22-3 (Cantelli Decl.) at ¶¶ 12(a)-12(o), 16(p)-16(q), 18-19. In response, Defendants remediated any Individual Defendant's access to and ability to use any of those documents. *See* Dkt. 55-2 (Thomas Decl.) at ¶¶ 32-34, Dkt. 55-3 (Moore Decl.) at ¶¶ 15-16, and 55-4 (Mathews Decl.) at ¶¶ 17-19; *see also* Dkt. 55-5 (Bandemer Decl.) (detailing HKA's forensic search, quarantine, removal, and preservation efforts); *see also* Dkt. 56-1 at 97-106 (other supporting declarations from HKA). Over a month later after receiving these detailed declarations, Nutrabolt cannot point to a single, concrete deficiency with the remediation efforts Defendants did. *See generally* Ex. 3.

Because all Individual Defendants have relinquished access to every document Nutrabolt contends to be an alleged trade secret in its Motion, a preliminary injunction is not necessary as "there is no threatened future use of trade secrets." *CAE Integrated, L.L.C. v. Moov Tech., Inc.*, 44 F.4th 257, 263 (5th Cir. 2022 (citing *Embarcadero Techs., Inc. v. Redgate Software, Inc.*, 2017 WL 5588190, at *5 (W.D. Tex. Nov. 20, 2017)). Despite this, the Individual Defendants are still agreeing to be bound by a court order not to use or disclose those materials. In fact, what the Individual Defendants have offered is a non-use and non-disclosure stipulation that is even *broader* than the 15 alleged trade secret documents identified in Nutrabolt's Motion: "*any* confidential or proprietary documents, records, or electronic data belonging to Nutrabolt" so long it is not "(i) publicly known through no fault of the Individual Defendants," "(ii) lawfully acquired by, or known to, the Individual Defendants independent of Nutrabolt," or "(iii) previously produced, disclosed, and/or provided by Nutrabolt without an obligation of confidentiality and not by

3

inadvertence or mistake." *See* §I, ¶ 1 *supra*. These three carveouts from the scope of confidentiality are the same, standard carve-outs that are already in the Court's Protective Order for what is not considered confidential information in this lawsuit. *See* Dkt. 50 at 2, ¶ 4.

This was still not good enough for Nutrabolt. Instead, just yesterday afternoon, Nutrabolt came up with an extreme definition of confidential and trade secrets that is unmoored to any evidence or law. Even worse, Nutrabolt sought to impose onto Defendants a clear-and-convincing evidentiary burden to prove at trial that the information at issue is ***not*** Nutrabolt's confidential information and trade secrets. *See* Ex. 3 at 1-3. This is simply not negotiating in good faith.

**B. The employment restrictions Nutrabolt continues to insist on are unreasonable and indeed outside the scope of its (unenforceable) non-compete agreements.**

There is no case under trade secret law for restricting any Individual Defendant's employment. *See* 18 U.S.C. § 1836(b)(3)(A) (no injunctive relief that "prevent a person from entering into an employment relationship."); *see also Anadarko Petrol. Corp. v. Davis*, 2006 WL 3837518, at \*24 (S.D. Tex. Dec. 28, 2006) ("[W]hen a former employee misappropriates his employer's trade secrets, the appropriate remedy is to enjoin use and disclosure of those secrets, not to enjoin work in competition with the former employer."). So, Nutrabolt must show likelihood of success and prove imminent and irreparable harm tied to its non-compete claims.

The lack of harm alone should be dispositive. Worse, even putting aside whether these non-compete restrictions are enforceable[2], Nutrabolt has not even shown that any scope of employment at Recess would constitute ***breach***. On their face, the non-competes Nutrabolt seeks to enforce only cover 1) dietary and sports nutrition supplements, 2) protein powders, bars, and drinks, 3) products related to the fitness industry, and 4) convention food and drink products including energy drinks.

---

[2] They are not, for all the reasons previously briefed. *See* Dkt. 47 at §VI-B, Dkt. 55 at 17-18, and Dkt. 71 at 3-5.

> (a)   "**Company's Business**" means the business of developing, manufacturing, distributing and/or marketing dietary and sports nutrition supplements, protein powders, bars, and drinks, and other products related to the fitness industry in North America and throughout the world.

Doc. 22-2, Exs. 1, 9, and 15 ("NDAs") at ¶ 2(a).

> form, engaged in any business that competes with the Company's, its' Affiliates' or Subsidiaries' business of manufacturing, developing, distributing or marketing dietary and sports nutrition supplements, convention food and drink products, including but not limited to energy drinks, in any state of the United States or other jurisdiction where the Company currently sells its products or has sold its products within the two (2) years prior to the date of termination of Executive's

Doc. 22-5, Exs. 3-7, 11-14, and 17-15 ("Grant Agmts") at ¶ 6(b). There is no suggestion Recess is in any of those business lines. Instead, Nutrabolt argues that it competes with Recess in the "functional beverages" space. *See* Doc. 22-3 at ¶ 7. Even if this "functional beverages" market existed, and even if Recess competes in it, the words "functional beverages" are still not found in the non-competes.[3] Nutrabolt has no viable case for restricting any scope of employment at Recess.

**C.  Nutrabolt also seeks non-solicit injunctions that are unmoored from the record.**

Nutrabolt has put on no case whatsoever for alleged non-solicit violations. In fact, its argument on alleged non-solicit "breach" is limited to one sentence (about Mr. Thomas only) that cites no evidence. *See* Dkt. 22 at 36. The Court did not direct conferral on a non-solicit injunction. *See* Ex. 2. Non-solicit issues did not even come up during the hearing. *See generally* Ex. 1.

### III.CONCLUSION

Nutrabolt has not proven any injunction case. Yet, by entering the stipulations in the Individual Defendants' proposed order, Nutrabolt achieves more restrictions around its alleged confidential and trade secret information that it would be entitled to under the evidence it has put before the Court. Therefore, the Individual Defendants respectfully request that the Court deny Nutrabolt's Motion subject to the above stipulations as reflected in the attached Proposed Order.

---

[3] To be clear, there is no such competition between the two companies. *See generally* Dkt. Nos. 55, 56.

Dated: May 1, 2026

Respectfully submitted,

**AHMAD ZAVITSANOS & MENSING P.L.L.C.**

*/s/ Joseph Y. Ahmad*
Joseph Y. Ahmad
Texas Bar No. 00941100
Fed ID No. 11604
1221 McKinney St., Suite 2500
Houston, Texas 77010
Tel: (713) 655-1101
Fax: (713) 655-0062
joeahmad@azalaw.com

***Attorney-in-Charge for Defendants Kyle Thomas,
Terrence Moore, Jr., and Madison Mathews***

OF COUNSEL:

Weining Bai
Texas Bar No. 24101477
Fed ID No. 2996450
Hailey Pulman
Texas Bar No. 24121469
Fed ID No. 3835977
Grace M. Darrah
Texas Bar No. 24143615
Federal ID No. 3963683
**AHMAD ZAVITSANOS & MENSING P.L.L.C.**
1221 McKinney St., Suite 2500
Houston, Texas 77010
Tel: (713) 655-1101
Fax: (713) 655-0062
wbai@azalaw.com
hpulman@azalaw.com
gdarrah@azalaw.com

## CERTIFICATE OF SERVICE

I hereby certify that, on May 1, 2026, a true and correct copy of the foregoing document was served upon all counsel of record in accordance with the Federal Rules of Civil Procedure.

*/s/ Joseph Y. Ahmad*
Joseph Y. Ahmad